1   Gregory A. Rougeau (194437)
    BRUNETTI ROUGEAU LLP
2   400 Montgomery Street, Suite 1000
    San Francisco, California 94104
3   Tel: (415) 992-8940
    Fax: (415) 992-8915
4   Email: grougeau@brlawsf.com

5   Counsel for Chapter 11 Trustee
    KYLE EVERETT

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11

12  In re                               Case No.  14-52222

13                                       Chapter 11
    DENE BUSTICHI;
14  MELODIE BUSTICHI.

15

16            Debtors

17

18

19                  **CHAPTER 11 TRUSTEE'S**
20  **SECOND MODIFIED PLAN OF REORGANIZATION DATED MARCH 8, 2017**

21

22

23

24

25

26

27

28

PLAN OF REORGANIZATION

## I.      INTRODUCTION.

This Plan of Reorganization (the "Plan") is propounded by KYLE EVERETT, the duly appointed Chapter 11 Trustee (the "Trustee") in the above-captioned Chapter 11 Case.

Reference is made to the Disclosure Statement accompanying this Plan for a discussion of the circumstances surrounding the commencement of this Chapter 11 case by DENE BUSTICHI and MELODIE BUSTICHI, the debtors herein (the "Debtors"), the Debtors' income and expenses, a summary and analysis of this Plan, and certain related matters. The Trustee is the proponent of this Plan within the meaning of Bankruptcy Code Section 1129.

ALL CREDITORS OF THE DEBTORS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN BANKRUPTCY CODE SECTION 1127, BANKRUPTCY RULE 3019 AND IN THIS PLAN, THE TRUSTEE RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN AT ANY TIME PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms herein shall have the meanings set forth in Section II(A), below.

## II.     DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### A.      DEFINED TERMS.

As used in this Plan, the following terms have the meanings specified below, which meanings are equally applicable to both the singular and plural forms of the terms defined:

1.      "Administrative Claim" means any Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals) of the Chapter 11 case asserted or arising under Bankruptcy Code Sections 503, 507(a)(2) or 1114(e)(2) including, but not limited to, (i) any actual and necessary post-Petition Date cost or expense of preserving the Debtor's estate, (ii) compensation and reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under Bankruptcy Code Sections 328, 330(a) or 331, and (iii) any fees or charges assessed against the Debtor's estate under Section 1930 of the title 28 of the United States Code.

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 2 of 27

2.      "Allowed Claim" means a Claim against the Debtors (a) proof of which was timely filed with the Bankruptcy Court and as to which no objection has been filed; (b) which was listed in Debtor's Schedules of Assets and Liabilities filed herein and (i) not shown as disputed, contingent or unliquidated and (ii) as to which no objection has been filed; or (c) which has been Allowed by a Final Order of the Bankruptcy Court.

3.      "Ballot" means the ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on this Plan may indicate their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

4.      "Bankruptcy Code" means Title 11 of the United States Code, as amended, as applicable to the Chapter 11 Case.

5.      "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California (Oakland Division).

6.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Case and any Local Rules of the Bankruptcy Court.

7.      "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

8.      "Chapter 11 Case" means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

9.      "Claim" means any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, including, without limitation, any claim against any of the Debtors as defined in Bankruptcy Code Section 101.

10.     "Class" means a category of Holders of Claims or Interests as set forth in this Plan.

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 3 of 27

11.    "Confirmation Date" means the date upon which the Plan Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 902l.

12.    "Creditor" means any entity or person that is the Holder of any Claim against the Debtor.

13.    "Disallowed" means any Claim, or portion thereof, which: (a) has been withdrawn, in whole or in part; or (b) is scheduled by the Debtors in their Schedules as most recently amended as contingent, disputed or unliquidated and the Holder of such Claim has not filed a proof of Claim by the applicable Bar Date; or (c) has been Disallowed, in whole or in part, by Final Order of a court of competent jurisdiction.  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance or withdrawal.

14.    "Disallowed Claim" means a Claim, or any portion thereof, that is Disallowed.

15.    "Disclosure Statement" means the disclosure statement for this Plan approved by the Bankruptcy Court.

16.    "Disputed" means any Claim as to which the Trustee, the Debtors, or any other party in interest has, within the time permitted under applicable law, interposed an objection or request for estimation or subordination or is otherwise disputed by the Trustee, the Debtors, or any other party in interest with standing in accordance with applicable law, which objection, pending litigation, request for estimation or subordination or dispute has not been withdrawn or determined by a Final Order.

17.    "Effective Date" means the date that this Plan becomes effective, which date will be the first business day (after the payment of the Effective Day Payments)  which is at least fourteen (14) days following the date of entry of the Plan Confirmation Order, assuming there has been no order entered staying the effectiveness of the Plan Confirmation Order.  If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order and the Effective Day Payments have been made.

18.    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

19.    "Final Order" means an order, ruling, or judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended

Case: 14-52222    Doc# 289    Filed: 04/03/17    Entered: 04/03/17 23:17:04    Page 4 of 27

and as to which: (a) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending; or (b) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted.

20.    "Holder" means an Entity or Person holding a Claim.

21.    "Impaired" means a Claim or Class of Claims that is impaired within the meaning of Bankruptcy Code Section 1124.

22.    "Lien" means any charge against or interest in property to secure payment or performance of a claim, debt or obligation.

23.    "Plan" means this Second Modified Plan of Reorganization Dated March 8, 2017 proposed by the Trustee, including all exhibits, appendices, schedules and annexes, if any, attached hereto, and as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Plan Confirmation Order and the terms and conditions of this Plan.

24.    "Plan Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code Section 1129.

25.    "Priority Claims" means those Claims afforded priority under Bankruptcy Code Sections 507(a) and (b), excluding Administrative Claims and Priority Tax Claims.

26.    "Priority Tax Claims" means those Claims afforded priority under Bankruptcy Code Section 507(a)(8).

27.    "Schedules" means the Debtor's schedules of assets and liabilities, statements of financial affairs, and such other schedules filed with the Bankruptcy Court by the Debtor in accordance with Bankruptcy Code Section 521, the Official Bankruptcy Forms, and the Bankruptcy Rules, as amended from time to time.

28.    "Secured Claim" means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under

Case: 14-52222    Doc# 289    Filed: 04/03/17    Entered: 04/03/17 23:17:04    Page 5 of 27

applicable law on property in which the Debtors have an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Bankruptcy Code Section 553; provided, however, with respect to both (a) and (b), only to the extent of such Debtors' interest in the value of the assets or property securing any such Claim or the amount subject to setoff, as the case may be.

29. "Unsecured Claim" means any Claim that is classified in Class 10, but only to the extent such Claim is not a Secured Claim.

30. Other Definitions: Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, all section, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

## B.  RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW.

For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in this Plan to a contract, instrument, release, Indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (e) the rules of construction set forth in Bankruptcy Code Section 102 shall apply; and (f) any term used in capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 6 of 27

have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

To the extent of any inconsistency between the terms of the Plan Confirmation Order and the terms of this Plan or any other document or agreement submitted, prepared or approved in connection with this Plan, the Plan Confirmation Order shall prevail. To the extent of any inconsistency between the terms of this Plan and any other document or agreement submitted, prepared or approved in connection with this Plan, this Plan shall prevail.

## III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.

### A. INTRODUCTION.

In general, a Chapter 11 plan: (i) divides claims and equity interests into separate classes; (ii) specifies the Property that each class is to receive under the plan; and (iii) contains other provisions necessary to the reorganization or liquidation of the debtor. Under the Bankruptcy Code, Claims and "equity interests" (or "Interests") are classified rather than "creditors" and "shareholders." For purposes of this Disclosure Statement, the term "Holder" refers to the Holder of a Claim or Interest.

### B. GENERAL PLAN DESCRIPTION.

The Plan is a plan of reorganization for the Debtors. Pursuant to the Plan, the Debtors, with the help of their family and of Bustichi & Company, will monetize the value of their fractional interest in real property commonly known as 19 Sunset Terrace, Scotts Valley, California ("19 Sunset Terrace"), monetize the value of the Debtors' personal property, and make provisions to immediately pay certain administrative claims. The Debtors will also commit eight years of disposable income toward Plan payments.

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 7 of 27

## C.    CLASSIFICATION AND TREATMENT OF CLAIMS.

Bankruptcy Code Section 1122 provides that a plan of reorganization must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with Section 1122, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Claims and Priority Tax Claims which, pursuant to Section 1123(a)(1), are not to be classified).  The Trustee also is required, under Section 1122, to classify Claims against the Debtors into Classes that contain Claims that are substantially similar to the other Claims in such Class.

The Trustee believes that the Plan has classified all Claims and Interests in compliance with the provisions of Section 1122 and applicable case law, but it is possible that a Holder of a Claim may challenge the Trustee's classification of Claims and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed.  In that event, the Trustee intends, to the extent permitted by the Bankruptcy Code and the Bankruptcy Court, to make such reasonable modifications of the classifications under the Plan to permit confirmation and to use the Plan acceptances received for purposes of obtaining the approval of the reconstituted Class or Classes of which each accepting Holder ultimately is deemed to be a member.  Any such reclassification could adversely affect the Class in which such Holder initially was a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized below.  The Trustee believes that the consideration, if any, provided under the Plan to the Holders of Claims reflects an appropriate resolution of their Claims, taking into account the differing nature and priority of such Claims and the fair value of the Debtors' Property.  Bankruptcy Code Section 1129(b) permits confirmation of a Chapter 11 plan in certain circumstances even if the plan has not been accepted by all impaired Classes of Claims.  Although the Trustee believes that the Plan can be confirmed under Section 1129(b), there can be no assurance that the Bankruptcy Court will find that the requirements to do so have been satisfied.

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 8 of
27

1.   Unclassified Claims.

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Trustee has not placed the following claims in a class.

a.   Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment. The following chart lists all of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan.

| Name | Amount owed | Treatment |
| --- | --- | --- |
| Office of the United States Trustee ("OUST") | $325.00 (est.) | Paid in full on the Effective Date. |
| Brunetti Rougeau LLP, bankruptcy counsel to the Trustee. | $25,000.00 (Brunetti Rougeau has agreed to cap its fees, in order to effect confirmation and to ensure the Plan is feasible). This is an estimated figure; fees- not costs- shall be capped at $25,000. | $12,500 of this expense (plus all costs) shall be paid on the Effective Date. The remaining approximately $12,500 will be paid pro rata over 21 months ($613.30 per month for 20 months, and a single payment of $234 in the 21st month), from the Debtors' net disposable income, and shall be paid before any distributions to unsecured creditors from such income. |
| Kyle Everett (Chapter 11 Trustee) and DSI (consultant to Chapter 11 Trustee). | $10,000.00 (est.) | $5,000 (50% if actual is different) of this expense (plus all costs) shall be paid on the Effective Date. The remaining $5,000 (50%) will be paid pro rata over 21 months ($245.32 per month for 20 months, and a single payment of $93.60 in the 21st month), from the Debtors' net disposable income, and shall be paid before any distributions to unsecured creditors |

PLAN OF REORGANIZATION

8

| | | from such income. |
|---|---|---|
| Lars Fuller, former Chapter 11 counsel to the Debtors. | $25,000.00[1] | $12,500 (50%) of this expense plus all costs shall be paid on the Effective Date. The remaining approximately $12,500 will be paid pro rata over 21 months ($613.30 per month for 20 months, and a single payment of $234 in the 21st month), from the Debtors' net disposable income, and shall be paid before any distributions to unsecured creditors from such income. |
| Internal Revenue Service | $16,000.00 (est.) | Paid in full on the Effective Date, by the Debtors, from an advance made to them by Bustichi & Company. |
| Pacific Gas & Electric Company | $3,256.84 | Paid in full on the Effective Date. |
| **TOTAL** | **$79,581.84** | **Paid in the manner described above.** |

<u>Court Approval of Fees Required</u>:

      The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Court will be required to be paid under the Plan. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims.

---

[1] The Fuller Law Firm has applied for, and obtained interim approval of, its administrative fees and costs. The Trustee expects that the firm will agree to the same treatment as the Trustee himself and his counsel (who has agreed to cap fees, and take payments over time), as there are instances of fees incurred by the Fuller Law Firm that the Trustee believes may be subject to disallowance on a final basis in any event. In particular, the Trustee believes that, among other issues, the fees and costs incurred by the Fuller Law Firm in negotiating a settlement with Ohio Casualty, and incurred in connection with the Debtors' August 14, 2015 Combined Plan of Reorganization and Disclosure Statement premised on that settlement, did not benefit the estate or creditors, as the proposed settlement could not be approved

PLAN OF REORGANIZATION

9

b.    Priority Tax Claim (11 U.S.C. § 507(a)(8))

| Name | Amount owed | Treatment |
|---|---|---|
| State Board of Equalization | $1,892.23 | Paid in full on the Plan Effective Date. |

2.    Classified Claims and Interests

a.    Classes of Secured Claims

Secured claims are claims secured by liens against property of the estate. The following chart sets forth the description and treatment of each of the Debtor's secured claims:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 1 | Bank of America<br>• U2005 Sightseer 34A Motorhome (approximate value of $42,000 as of Petition Date).<br>• Total claim amount = $52,381.67. | No; allowed claims in this class are not entitled to vote on the Plan. | Debtors will surrender the collateral on the Effective Date of the Plan. The confirmation order will constitute an order for relief from stay. Any secured claim is satisfied in full through surrender of the collateral. Any deficiency claim is a general unsecured claim.<br><br>**If the Class 1 creditor believes it is entitled to a deficiency claim, it must file a Proof of Claim for such deficiency not later than sixty (60) days from the Effective Date of the Plan.** |

under Rule 9019 of the Federal Rules of Bankruptcy Procedure, and the previously filed Plan could not be confirmed.

PLAN OF REORGANIZATION

| | | | |
|---|---|---|---|
| 2 | Wheels Financial Group dba 1-800 Loan Mart<br><br>• 2004 Hummer H2 (65,845 miles) (approximate value of $16,000).<br><br>• Total claim amount = $10,409.47. | Yes; allowed claims in this class are entitled to vote on the Plan. | The vehicle that is the collateral of the Class 2 creditor shall remain in Debtors' possession. Bustichi & Company will pay the entire amount contractually due by making all post-confirmation regular monthly payments, in the amount of $730.94.<br><br>According to Claim No. 2, the Class 2 creditor asserts that the Debtors are in arrears on their contractual obligations, in the amount of $10,409.47. The arrears shall be paid by Bustichi & Company on Debtors' behalf, with interest at the rate of five percent (5%) per annum, in 60 equal monthly payments, due the 1st day of the month, starting the month after the Effective Date. To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the number of payments. The Class 2 creditor shall retain its interest in the collateral until paid in full.<br><br>The Class 2 creditor may not repossess or dispose of its collateral so long as Debtors are not in material default under the Plan. |
| 3 | Secured claim of DiTech, for the First Note and related Deed of Trust on Debtors' residence.<br><br>• Collateral description = Real property commonly known as 13 Sunset Terrace, Scotts Valley, CA (Debtors' approximate value of $925,000.00).<br><br>• Total claim amount = $209,645.11 (est.) | No; allowed claims in this class are not entitled to vote on the Plan. | This creditor's legal, equitable, and contractual rights remain unchanged with respect to the real property collateral. The balance of the loan as of the petition date was $209,645.11. Payments are $1,785.00 per month. The confirmation order will constitute an order for relief from stay. DiTech shall retain its interest in the collateral until paid in full. |
| 4 | Secured claim of Citimortgage, for Second Note and Related Deed of Trust on Debtors' residence.<br><br>• Collateral description = Real property commonly known as 13 Sunset | Yes; allowed claims in this class are entitled to vote on the Plan. | Debtors will pay the entire amount contractually due by making all post-confirmation regular monthly payments, in the amount of $2,670.82 per month.<br><br>The Trustee has been informed by Citimortgage that pre and postpetition arrears total $75,000. The Debtors shall |

PLAN OF REORGANIZATION

| | | | |
|---|---|---|---|
| | Terrace, Scotts Valley, CA (Debtors' approximate value of $925,000.00).<br><br>• Total claim amount = $492,931.16 (est.) | | pay such arrears, with interest at the rate of five percent (5%) per annum, in 60 equal monthly payments, due the 1st day of the month, starting the month after the Effective Date. To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the number of payments. Citimortgage shall retain its interest in the collateral until paid in full.<br><br>Citimortgage may not repossess or dispose of its collateral so long as Debtors are not in material default under the Plan. |
| 5 | Secured claim of Ohio Casualty, for the Third Deed Of Trust on the Debtors' residence.<br><br>• Collateral description = Real property commonly known as 13 Sunset Terrace, Scotts Valley, CA (Debtors' approximate value of $925,000.00).<br><br>• Total claim amount = $225,000.00 | Yes; allowed claims in this class are entitled to vote on the Plan. | Debtors will make payments to Ohio Casualty according to the terms of the Settlement Agreement, and related secured Note, attached hereto as Exhibit 2.<br><br>Debtors and Ohio Casualty executed an Amended and Restated Long Form Deed of Trust and Assignment of Rents, reducing the principal balance of existing debt secured by the Third Deed of Trust on Debtors' residence from $3,000,000 to $225,000. The Amended and Restated Deed of Trust shall be recorded by Ohio Casualty upon confirmation of the Plan, and shall maintain the same priority as the existing Deed of Trust.<br><br>Ohio Casualty shall be paid a secured claim in the amount equal to the value of the collateral, plus minimal interest determined by the Plan for a total of $236,325.60 in payments over twenty (20) years. Payments shall be made under the Plan as follows:<br><br>Payments of $602.40 per month for 60 months (5 years), due the 1st day of the month, starting the month after the Effective Date of the Plan;<br><br>Payments of $1,112.12 per month for 180 months (15 years), due the 1st day of the month, starting 61 months after |

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 13 of 27

|  |  |  | the Effective Date of the Plan |
|  |  |  | Ohio Casualty may not repossess or dispose of its collateral so long as Debtors are not in material default under the Plan, or under the Note. |

        b.     <u>Disputed Secured Claims Subject To Lien Stripping</u>

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 6 | No. American Bancard, LLC.<br>• Collateral description = Real property commonly known as 13 Sunset Terrace, Scotts Valley, CA (Debtors' approximate value of $925,000).<br>• Amount of Claim = $3,858.98. | Yes; allowed claims in this class are entitled to vote on the Plan. | Prior to confirmation, Debtors will obtain orders fixing the secured amount of this claim as $0.00. Debtors will pay nothing to this Class as secured claims. Any claim of a creditor whose lien is stripped is a general unsecured creditor whose claim shall be paid, pro rata, with other general unsecured creditors, described below.<br><br>Creditors in this Class may not repossess or dispose of its collateral so long as Debtors are not in material default under the Plan. The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. |
| 7 | iPayment, Inc.<br>• Collateral description = Real property commonly known as 13 Sunset Terrace, Scotts Valley, CA (Debtors' approximate value of $925,000).<br>• Amount of Claim = $13,865.81. | Yes; allowed claims in this class are entitled to vote on the Plan. | Prior to confirmation, Debtors will obtain orders fixing the secured amount of this claim as $0.00. Debtors will pay nothing to this Class as secured claims. Any claim of a creditor whose lien is stripped is a general unsecured creditor whose claim shall be paid, pro rata, with other general unsecured creditors, described below.<br><br>Creditors in this Class may not repossess or dispose of its collateral so long as Debtors are not in material default under the Plan. The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. |

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 14 of 27

c.     <u>Secured Claims Paid In Full Over Time</u>.

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 8 | No. American Bancard, LLC.<br><br>• Collateral description = Real property commonly known as 19 Sunset Terrace, Scotts Valley, CA (Debtors' approximate value of $162,500) (Debtors' 25% interest).<br><br>• Amount of Claim = $3,858.98. | Yes; allowed claims in this class are entitled to vote on the Plan. | Creditors in this Class will be paid in full over 5 years, with interest at a rate of 2% per annum (monthly payment of $67.64).<br><br>Creditors in this Class may not repossess or dispose of its collateral so long as Debtors are not in material default under the Plan. |
| 9 | iPayment, Inc.<br><br>• Collateral description = Real property commonly known as 19 Sunset Terrace, Scotts Valley, CA (approximate value of $162,000) (Debtors' 25% interest).<br><br>• Amount of Claim = $13,865.81. | Yes; allowed claims in this class are entitled to vote on the Plan. | Creditors in this Class will be paid in full over 5 years, with interest at a rate of 2% per annum (monthly payment of $243.04).<br><br>Creditors in this Class may not repossess or dispose of its collateral so long as Debtors are not in material default under the Plan. |

d.     <u>General Unsecured Claims</u>.

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).

Class 10 creditors with allowed Claims shall receive a *pro rata* share of approximately $134,525.93, which represents the proceeds from the monetization of Mr. Bustichi's fractional interest

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 15 of 27

in 19 Sunset Terrace, monetization of the value of the Debtors' personal property, and funds retained by the Trustee, less the administrative and priority payments that will be made on the Effective Date, described above. Class 10 creditors with allowed Claims shall also receive a *pro rata* share of the Debtors' net disposable income, beginning in the 22nd month of the 96-month term of the Plan. The payments to Class 10 creditors are described in the table below.

Distributions to creditors in Class 10 is likely to vary from the tables set forth below, and from Exhibit 5. The Trustee expects to object to numerous creditors' scheduled debts or claims (identified below as disputed) whose claims have not been evidenced through a filed Proof of Claim in this case, or whose claims are otherwise insufficient. Disallowance of any claims or scheduled debts in Class 10 will necessarily increase the amount to be distributed to the remaining general unsecured creditors.

The following table identifies the treatment of the general unsecured claims:

| Class | Name | Claim Amount | Disputed | Effective Date Payment (If Allowed) | Monthly Payments (22-60) (If Allowed) | Monthly Payments (61-96) (If Allowed) | Total Plan Payments |
|-------|------|--------------|----------|-------------------------------------|---------------------------------------|---------------------------------------|---------------------|
| 10 | Afni, Inc. | 95.00 | Y | 2.76 | 0.03 | 0.06 | 6.00 |
| | Amercian Infosource | 11,064.45 | N | 321.05 | 3.51 | 6.68 | 698.43 |
| | Amercian Infosource | 6,078.28 | N | 176.37 | 1.93 | 3.67 | 383.69 |
| | Atlantic Credit & Finance | 9,368.55 | N | 271.84 | 2.97 | 5.65 | 591.38 |
| | Atlas Acquisitions | 4,252.17 | N | 123.38 | 1.35 | 2.57 | 268.41 |
| | Atrium Windows & Doors, Inc. | 6,163.43 | N | 178.84 | 1.96 | 3.72 | 389.06 |
| | Bank of America | 74,672.91 | Y | 2,166.75 | 23.71 | 45.06 | 4,713.67 |
| | Big Creek Lumber | 2,732.00 | Y | 79.27 | 0.87 | 1.65 | 172.46 |
| | Bogner's All Air | 440.00 | Y | 12.77 | 0.14 | 0.27 | 27.77 |
| | Cal. Serv. Bureau | 203.00 | Y | 5.89 | 0.06 | 0.12 | 12.81 |
| | Cap One | 2,569.00 | Y | 74.54 | 0.82 | 1.55 | 162.17 |
| | Cap One | 1,162.00 | Y | 33.72 | 0.37 | 0.70 | 73.35 |
| | Cap One | 20,566.00 | Y | 596.76 | 6.53 | 12.41 | 1,298.21 |
| | Com Serv Grp | 8,426.00 | Y | 244.49 | 2.68 | 5.09 | 531.88 |
| | Consolidated Rcvy Grp | 1,152.76 | Y | 33.45 | 0.37 | 0.70 | 72.77 |
| | Douglas Perkins | 3,088.00 | N | 89.60 | 0.98 | 1.86 | 194.93 |
| | Eugene Bustichi | 38,000.00 | Y | 1,102.63 | 12.06 | 22.93 | 2,398.72 |
| | Greenwaste Recovery | 405.68 | Y | 11.77 | 0.13 | 0.24 | 25.61 |
| | Guaranty Co. of North America | 1,500,000.00 | Y | 43,524.90 | 476.23 | 905.23 | 94,686.25 |
| | Innovative Merchant Solutions | 1,152.76 | N | 33.45 | 0.37 | 0.70 | 72.77 |

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 16 of 27

| Name | Claim Amount | | Monthly Payments | | | Total Plan Payments |
|---|---|---|---|---|---|---|
| LTD Financial Services | 8,247.71 | Y | 239.32 | 2.62 | 4.98 | 520.63 |
| McCarthy Burgess & Wolfe | 4,000.00 | Y | 116.07 | 1.27 | 2.41 | 252.50 |
| Michael Ackerman | 3,897.33 | Y | 113.09 | 1.24 | 2.35 | 246.02 |
| Midland Funding, LLC | 11,064.00 | Y | 321.04 | 3.51 | 6.68 | 698.41 |
| Midland Funding, LLC | 6,078.00 | Y | 176.36 | 1.93 | 3.67 | 383.67 |
| Midland Funding, LLC | 5,963.00 | Y | 173.03 | 1.89 | 3.60 | 376.41 |
| Ohio Casualty | 2,815,836.00 | N | 81,705.98 | 893.99 | 1,699.33 | 177,747.31 |
| OSH | 2,051.21 | Y | 59.52 | 0.65 | 1.24 | 129.48 |
| Pacific Bell Telephone Co. (AT&T) | 790.41 | N | 22.94 | 0.25 | 0.48 | 49.89 |
| Pacific Gas & Electric Co. | 19,715.07 | N | 572.06 | 6.26 | 11.90 | 1,244.50 |
| Portfolio Recovery Assoc. | 20,566.56 | N | 596.77 | 6.53 | 12.41 | 1,298.25 |
| Portfolio Recovery Assoc. | 2,569.39 | N | 74.55 | 0.82 | 1.55 | 162.19 |
| Portfolio Recovery Assoc. | 1,162.25 | N | 33.72 | 0.37 | 0.70 | 73.37 |
| System & Services Technologies, Inc. | 11,454.78 | N | 332.38 | 3.64 | 6.91 | 723.07 |
| Tose Supply | 1,864.00 | Y | 54.09 | 0.59 | 1.12 | 117.66 |
| Wells Fargo Bank | 936.62 | N | 27.18 | 0.30 | 0.57 | 59.12 |
| Wells Fargo Bank | 3,383.49 | N | 98.18 | 1.07 | 2.04 | 213.58 |
| Wesco Insurance Co. | 25,000.00 | Y | 725.41 | 7.94 | 15.09 | 1,578.10 |
| **TOTAL** | **4,636,171.81** | | **134,525.93** | **1,471.92** | **2,797.88** | **292,654.49** |

At the discretion of the Reorganized Debtors, who shall act as the disbursing agents for the monthly payments to Class 10 creditors, scheduled monthly distributions to creditors in amounts less than $10.00 may be held in reserve by the Reorganized Debtors until either (i) cumulative monthly distributions exceed $10.00 (at which time the distributions shall be made), or (ii) final distributions are paid. The following schedule lists such affected Class 10 creditors:

| Name | Claim Amount | Monthly Payments (22-60) (If Allowed) | Monthly Payments (61-96) (If Allowed) | Total Plan Payments |
|---|---|---|---|---|
| Afni, Inc. | 95.00 | 0.03 | 0.06 | 6.00 |
| Amercian Infosource | 11,064.45 | 3.51 | 6.68 | 698.43 |
| Amercian Infosource | 6,078.28 | 1.93 | 3.67 | 383.69 |
| Atlantic Credit & Finance | 9,368.55 | 2.97 | 5.65 | 591.38 |

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 17 of 27

| | | | | |
|---|---|---|---|---|
| Atlas Acquisitions | 4,252.17 | 1.35 | 2.57 | 268.41 |
| Atrium Windows & Doors, Inc. | 6,163.43 | 1.96 | 3.72 | 389.06 |
| Big Creek Lumber | 2,732.00 | 0.87 | 1.65 | 172.46 |
| Bogner's All Air | 440.00 | 0.14 | 0.27 | 27.77 |
| Cal. Serv. Bureau | 203.00 | 0.06 | 0.12 | 12.81 |
| Cap One | 2,569.00 | 0.82 | 1.55 | 162.17 |
| Cap One | 1,162.00 | 0.37 | 0.70 | 73.35 |
| Cap One | 20,566.00 | 6.53 | 12.41 | 1,298.21 |
| Com Serv Grp | 8,426.00 | 2.68 | 5.09 | 531.88 |
| Consolidated Rcvy Grp | 1,152.76 | 0.37 | 0.70 | 72.77 |
| Douglas Perkins | 3,088.00 | 0.98 | 1.86 | 194.93 |
| Greenwaste Recovery | 405.68 | 0.13 | 0.24 | 25.61 |
| Innovative Merchant Solutions | 1,152.76 | 0.37 | 0.70 | 72.77 |
| LTD Financial Services | 8,247.71 | 2.62 | 4.98 | 520.63 |
| McCarthy Burgess & Wolfe | 4,000.00 | 1.27 | 2.41 | 252.50 |
| Michael Ackerman | 3,897.33 | 1.24 | 2.35 | 246.02 |
| Midland Funding, LLC | 11,064.00 | 3.51 | 6.68 | 698.41 |
| Midland Funding, LLC | 6,078.00 | 1.93 | 3.67 | 383.67 |
| Midland Funding, LLC | 5,963.00 | 1.89 | 3.60 | 376.41 |
| OSH | 2,051.21 | 0.65 | 1.24 | 129.48 |
| Pacific Bell Telephone Co. (AT&T) | 790.41 | 0.25 | 0.48 | 49.89 |
| Pacific Gas & Electric Co. | 19,715.07 | 6.26 | 11.90 | 1,244.50 |
| Portfolio Recovery Assoc. | 20,566.56 | 6.53 | 12.41 | 1,298.25 |
| Portfolio Recovery Assoc. | 2,569.39 | 0.82 | 1.55 | 162.19 |

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 18 of 27

| | | | | |
|---|---|---|---|---|
| Portfolio Recovery Assoc. | 1,162.25 | 0.37 | 0.70 | 73.37 |
| System & Services Tchnologies, Inc. | 11,454.78 | 3.64 | 6.91 | 723.07 |
| Tose Supply | 1,864.00 | 0.59 | 1.12 | 117.66 |
| Wells Fargo Bank | 936.62 | 0.30 | 0.57 | 59.12 |
| Wells Fargo Bank | 3,383.49 | 1.07 | 2.04 | 213.58 |
| Wesco Insurance Co. | 25,000.00 | 7.94 | 15.09 | 1,578.10 |

Creditors in this class may not take any collection action against Debtors so long as the Debtors are not in material default under the Plan (defined below).

## IV. OTHER PROVISIONS GOVERNING THE TREATMENT OF CREDITORS.

### A. EFFECT OF CONFIRMATION OF THE PLAN.

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without further approval or order from the Bankruptcy Court. The Chapter 11 Trustee shall be discharged from his responsibilities as Trustee as of the Effective Date. The Reorganized Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to carry out the Plan and to effectuate the distributions provided for under the Plan, subject to the provisions of the Plan.

### B. MEANS OF EXECUTION OF THE PLAN.

1. <u>Funding of the Plan</u>.

The Plan shall be funded through the following sources:

a. Existing cash on hand retained by the Trustee (approximately $20,000);

b. Transfer of the Debtor's personal property to Bustichi & Company, for $20,000;

c. $130,000 paid by the Debtors and their family to monetize the Debtors' interest in 19 Sunset Terrace; and

d.    Continue to pay Dene Bustichi's gross salary of $17,500 per month after the Effective Date, payment to creditors of the Debtors' net disposable income, over a period of eight years (96 months). The Trustee estimates that the net disposable income, per month, will be $1,471.92 for the initial sixty (60) month term of the Plan, and $2,797.88 per month for the final 36 months of the Plan term. The monthly payments shall begin to be distributed to unsecured creditors on the 22nd month of the 96-month payment terms of the Plan. Class 10 creditors will receive a total of approximately $292,654.49 under the Plan.

2.   <u>Feasibility</u>.

The implementation of the Plan is feasible in that the Debtors, the Debtors' family, and Bustichi & Company have demonstrable means of performing their obligations.

3.   <u>Means of Execution</u>:

a.    The Chapter 11 Trustee shall be discharged upon the Effective Date, after making Effective Date distributions (or reserving for such distributions pending final approval of fees).

b.    Following the discharge of the Chapter 11 Trustee, the Debtors shall make all payments to creditors, directly, as prescribed herein.

c.    No distribution shall be made on account of any Claim unless and until it is determined to be an Allowed Claim by the Trustee or the Court.

d.    Any payment to be made under the Plan shall be deemed timely made if it is mailed to the recipient's last known address within the 10 calendar days following the date described in this Plan.

## C.   DISCHARGE.

The Debtors shall not receive a discharge of debts until they make all payments due under the Plan or the court grants a hardship discharge.

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 20 of 27

### D. VESTING OF PROPERTY.

On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided below.

### E. PLAN CREATES NEW OBLIGATIONS.

Except as provided in Section F(4) and (5), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

### F. REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

1. <u>Creditor Action Restrained</u>. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtors are not in material default under the Plan, except as provided in subpart F(5) below.

2. <u>Obligations to Each Class Separate</u>. Debtors' obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.

3. <u>Material Default Defined</u>. If Debtors fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtors and Debtors' attorney (if any) a written notice of Debtor's default. If Debtors fail within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 21 of 27

default occurred, then Debtors are in Material Default under the Plan to all the members of the affected class.

4. <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtors' pre-confirmation obligations.

5. <u>Claims Not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part F, any creditor whose claims are left unimpaired under the Plan may, notwithstanding subparagraphs (1), (2), (3), and (4) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

6. <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

7. <u>Retention of Jurisdiction</u>. The Bankruptcy Court may exercise jurisdiction over proceedings concerning: (i) whether Debtors are in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this Court; (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

## VIII.  CLAIMS RESOLUTION AND DISTRIBUTIONS.

### A.  OBJECTIONS TO CLAIMS.

Following confirmation, the Debtors or the Reorganized Debtors, as the case may be, may object to or seek subordination of any claim filed or scheduled in this bankruptcy case (unless the Court has already entered an order allowing a claim), or may continue to litigate any objections to claims or scheduled debts filed by the Trustee prior to confirmation.

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 22 of 27

### B. LATE CLAIMS VOID.

Unless otherwise expressly ordered by the Bankruptcy Court or otherwise provided by the Plan, any Claim filed after the Claims Bar Date shall be void and of no force or effect, and shall receive no distributions under the Plan.

### C. ESTIMATION OF CLAIMS.

The Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code Section 502(c) regardless of whether the Trustee or the Debtors, or any other party in interest, previously objected to such Claim, or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction over the Debtor's estate and this Chapter 11 Case to estimate any Claim at any time prior to the entry of a Final Decree closing this Chapter 11 Case. In the event that the Bankruptcy Court estimates any Claim, that estimated amount will constitute either the Allowed amount of such Claim (for Plan voting, Plan distribution or both) or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount is not binding for Plan distribution purposes, the Reorganized Debtors or any other party in interest may elect to pursue any supplemental ruling of the Bankruptcy Court, including any supplemental objection to the Claim, in connection with Plan distribution purposes.

## IX. GENERAL PROVISIONS.

### A. DISPUTED CLAIM RESERVE.

Debtors will create a reserve for disputed claims. Each time Debtors make a distribution to the holders of allowed claims, Debtors will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtors shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be distributed *pro-rata* among allowed claims in the applicable class.

### B. CRAMDOWN.

Pursuant to section 1129(b) of the Bankruptcy Code, Debtors reserve the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 23 of 27

## C. SEVERABILITY.

If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

## D. GOVERNING LAW.

Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

## E. LAWSUITS.

The Trustee does not believe that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist.

## F. NOTICES.

Any notice to the Debtors shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

> Dene Bustichi and Melodie Bustichi
> c/o C. Alex Naegele, A Professional Law Corporation
> 95 S. Market Street, Suite 300
> San Jose, CA 95113

## G. POST-CONFIRMATION UNITED STATES TRUSTEE FEES.

Following confirmation, Debtors shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtors are required to make these payments, Debtors shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

## H. DEADLINE FOR § 1111(B) ELECTION.

Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

## I. MODIFICATION OF PLAN.

The Trustee may modify the Plan at any time before confirmation, under Section 1127 of the Bankruptcy Code. A Holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as altered, amended or modified, unless within the

Case: 14-52222    Doc# 289    Filed: 04/03/17    Entered: 04/03/17 23:17:04    Page 24 of 27

time fixed by the Court, such Holder changes its previous acceptance or rejection by written notice served upon the Trustee.

### J.  REVOCATION OR WITHDRAWAL.

The Plan may be revoked or withdrawn by the Trustee prior to the Confirmation Date, in which case the Plan shall be deemed null and void.  In such event, nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any claims by the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any other entity in any further proceedings involving the Debtor.

### K.  CONTINUING VIABILITY OF OTHER ORDERS/AGREEMENTS.

Except to the extent expressly modified by the Plan, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between the Trustee, creditors and/or the Debtors shall continue in full force and effect.

### L.  FURTHER ORDERS.

From and after the Effective Date, the Reorganized Debtors may move the Court for such Orders as they deem advisable or beneficial to creditors or for the implementation of this Plan.

### M.  PROVISIONS REGARDING DISTRIBUTIONS.

With the exception of payments that are to be made on the Effective Date (which payments shall be made by the Trustee), the Reorganized Debtors shall act as the disbursing agents for the purpose of making all distributions provided for under the Plan to all classes.  The Reorganized Debtors shall serve without bond and without compensation for distribution services rendered in connection with the Plan. Distributions to be made on account of any claim shall be made as set forth in the Plan, or as promptly thereafter as practicable. The Reorganized Debtors shall make all monthly payments prescribed under this Plan on the first of the month, and distributions will be by check drawn on a domestic bank or by wire transfer, at the sole election of the Reorganized Debtors. The Reorganized Debtors shall make such distributions to the addresses shown on the Debtors' Schedules, or to a different address as set forth in a proof of claim or change of address duly filed with the Court.  The Reorganized Debtor shall have no obligation to research the address for any returned distribution payment for any creditor other than the address described above.

PLAN OF REORGANIZATION

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 25 of 27

24

Payments made pursuant to the terms of the Plan that are unclaimed as of three months following the date on which such distributions are made, whether because such payments have been returned as undeliverable without a proper forwarding address or have not been deposited, will be referred to herein as "Unclaimed Property". During the three months following the date any distribution is made pursuant to the Plan (the "Claiming Period"), Unclaimed Property shall be distributed to the holders of allowed claims entitled thereto upon presentment to the Reorganized Debtors of satisfactory proof of entitlement. Checks issued by the Reorganized Debtors to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtors by the holder of the allowed claim to whom such check was originally issued prior to the expiration of the Claiming Period. On the first day after the expiration of the Claiming Period: (i) holders of allowed claims previously entitled to such Unclaimed Property (including, but not limited to, the holder of any such claim who has failed to make a timely request for reissuance of a voided check) shall no longer be entitled to any payment on account of its allowed claim; (ii) such claims shall be deemed disallowed for all purposes; and (iii) the then remaining cash constituting Unclaimed Property with respect to such distribution shall vest with the Reorganized Debtors for inclusion in future distributions to all allowed general unsecured creditors.

If any Claim is a Disputed Claim, no distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim, unless a portion of the Claim which is Disputed is not Disputed, in which case that portion of the Claim which is not Disputed shall be treated as an Allowed Claim for distribution purposes. Once a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive a distribution in the manner described above and to the extent cumulative distributions have been made to creditors of allowed general unsecured claims. No distributions under the Plan shall be made on account of Claims that have been Disallowed.

## X. CONFIRMATION REQUEST

The Trustee requests Confirmation of this Plan pursuant to Section 1129(b) of the Code.

## XI. CONCLUSION AND RECOMMENDATION

The Trustee believes that the Plan is in the best interests of all Holders of Claims and urges

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 26 of 27

all Holders of Claims to vote to accept the Plan and to evidence such acceptance by returning their ballots to the Trustee's counsel so that they will actually be received on or before May 5, 2017.

DATED:        March 8, 2017

                                                By:    */s/   Kyle Everett*
                                                       Kyle Everett
                                                       Chapter 11 Trustee

Presented by:

BRUNETTI ROUGEAU, LLP

By:     */s/  Gregory A. Rougeau*
        Gregory A. Rougeau
        Counsel for the Chapter 11 Trustee

Case: 14-52222   Doc# 289   Filed: 04/03/17   Entered: 04/03/17 23:17:04   Page 27 of 27